UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| UNITED STATES OF AMERICA, | 3:11-CR-30014-RAL |
|---|---|
| Plaintiff, | |
| vs. | OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL |
| GILBERT OLIVER CROW EAGLE, JR., a/k/a LEONARD OLIVER, | |
| Defendant. | |

Following a jury trial on February 27, 28, 29, and March 1, 2012, Defendant Gilbert Oliver Crow Eagle, Jr., also known as Leonard Oliver ("Crow Eagle"), was convicted on two counts of aggravated sexual abuse of a child and two counts of abusive sexual contact, in violation of 18 U.S.C. §§ 1153, 2241(c), 2244(a)(1), 2246(2)(A), 2246(2)(C), and 2246(3). Doc. 118 at 1. The United States Court of Appeals for the Eighth Circuit affirmed Crow Eagle's conviction and sentence. Docs. 134, 135; United States v. Crow Eagle, 705 F.3d 325 (8th Cir. 2013) (per curiam).

On February 17, 2015, Crow Eagle filed a pro se Motion for New Trial under Rule 33(b)(1) of the Federal Rules of Criminal Procedure, which allows three years for a defendant to file a new trial motion "grounded on newly discovered evidence." Doc. 138. Crow Eagle primarily stated two arguments in his motion. First, he asserted that two material witnesses—Shannon Oliver Broken Leg ("Shannon") and Dusti Rose Oliver ("Dusti")—have recanted their testimony and stated that they were compelled to give false testimony. Doc. 138 at 2–4. Crow Eagle's second argument—concerning underrepresentation of Native Americans on his jury and in the pool—was denied by this Court on February 25, 2015, as "not 'grounded on newly discovered evidence.'" Doc. 140. In

1

addition to the two primary arguments, Crow Eagle also asserted malicious prosecution and claimed that his due process rights were violated. Doc. 138 at 2–3. He requested an evidentiary hearing. Doc. 138 at 3. The Government opposed Crow Eagle's motion and set forth argument and authorities why Crow Eagle was not entitled to relief. Doc. 139.

This Court then entered an Order Directing Defendant to Reply, part of which stated:

> Defendant's affidavit contains hearsay information about alleged recantation. For this Court to determine whether an evidentiary hearing is needed and whether appointment of counsel is merited, this Court needs to receive an affidavit from the Defendant at a minimum and ideally from those who heard alleged recantations detailing by whom, when, where, and to whom such alleged recantation statements were made and what was said, as well as when, how, and from whom Defendant learned of the alleged recantations.

Doc. 141 at 2. Thereafter, Crow Eagle signed and filed an affidavit asserting that a person who is now dead heard Shannon recant her statements. Doc. 142. Crow Eagle also submitted two letters from the person who ostensibly heard the dead man's hearsay statement about Shannon's alleged recantation, but those two letters do not corroborate that she recanted her testimony. Doc. 142-1. For the reasons explained below, the remainder of Defendant's Motion for New Trial is denied.

I. **FACTS PERTINENT TO NEW TRIAL MOTION**

Shannon and Dusti are both victims and nieces of Crow Eagle. At trial, Shannon testified that one night between 1991 and 1993, when she was eight to nine years old, Crow Eagle rubbed her vaginal area over her clothing. Doc. 99-1 at 57–66. Dusti testified that between 1998 and 1999, when she was six to seven years old, Crow Eagle rubbed her vaginal area over her clothing on numerous occasions. Doc 99-1 at 82–88. Dusti also testified that the abuse escalated to sexual intercourse, followed by intimidation by Crow Eagle to keep her silent. Doc. 99-1 at 89–95.

The government presented additional witnesses who testified about similar abuse by Crow Eagle. Crow Eagle's younger sister, Carlene Oliver, testified Crow Eagle had sexually abused her when she was six or seven years old, and the abuse continued until she was approximately eighteen. Doc. 99-1 at 228–233. Another niece of Crow Eagle, Jerilee Oliver, testified that she was sexually

abused by Crow Eagle on more than twenty occasions beginning when she was seven years old. Doc. 99-1 at 188–99. Yet another niece of Crow Eagle, Jamie Oliver, also testified that Crow Eagle had attempted to sexually assault her when she was ten or eleven years old. Doc. 99-1 at 10–12, 16–20.[1]

The government also presented testimony from Eric Oliver, Crow Eagle's nephew, and Bernadette Oliver, Shannon and Dusti's mother. Eric Oliver testified that he and his sister, Shannon, had slept over at Crow Eagle's home and were babysat by Crow Eagle when they were younger. Doc. 99-2 at 196–98. Bernadette testified that Crow Eagle had babysat both Dusti and Shannon. Doc. 99-2 at 13, 30–31. Bernadette also testified that she confronted Crow Eagle about sexually assaulting Shannon. Doc. 99-2 at 25–26. When she asked him why he had sexually assaulted her daughter, Crow Eagle replied, "That's what they get." Doc. 99-2 at 25–26.

Crow Eagle did not testify and argued that he did not sexually abuse anyone. He produced testimony that Shannon and Dusti had not stayed with him, that he had not taken care of them, and that did not he have access to sexually assault them. See, e.g., Doc. 99-2 at 127, 156–57, 186. The jury found Crow Eagle guilty of sexually abusing Shannon and Dusti. Doc. 80. Crow Eagle was acquitted on Count 5, an alleged sexual assault of Britney Sharpfish. Doc. 80.

Nearly three years after his conviction and sentencing, Crow Eagle filed the present motion for new trial. Doc. 138. To initially support his claim, Crow Eagle submitted an affidavit of his own dated February 10, 2015. Doc. 138-1 at 2. Crow Eagle's affidavit states he has been contacted by witnesses who have heard that Shannon and Dusti recanted their trial testimony. Doc. 138-1 at 2. Crow Eagle became aware of these claimed recantations between May 4, 2012 and August 8, 2014,

---

[1] The Eighth Circuit affirmed this Court's decision to allow evidence of prior sexual assaults against other family members. See Crow Eagle, 705 F.3d at 327–28. Crow Eagle also appealed this Court's exclusion of prior, allegedly false, allegations from Shannon, Dusti, and Jerilee of sexual assaults by other men. Id. at 328. Affirming this Court's ruling, the Eighth Circuit stated that Crow Eagle's evidence of falsity was weak, set forth "no firm proof of falsity," and would cause jury confusion and speculation. Id. at 329 (quotation omitted).

when he had a phone conversation with Keith Horse Looking ("Horse Looking"). Doc. 138-1 at 2. Specifically, Crow Eagle asserts that "Dale Eagle Deer personally witnessed Shannon Oliver Broken Leg recant her testimony and state it was her dad, Marlon and others who had sexually abused her and Dusti Rose Oliver." Doc. 138-1 at 2. Thereafter, this Court entered its Order Directing Defendant to Reply with more specific information, noting Crow Eagle's affidavit contains hearsay information. Doc. 141.

Crow Eagle subsequently filed a second affidavit which stated he "was told by Keith Horse Looking that Keith had been contacted by Dale Eagle Deer about Shannon recanting her allegations . . . ." Doc. 142. Dale Eagle Deer passed away and has given no sworn testimony by affidavit or otherwise. Doc. 142. Crow Eagle also submitted family photographs to this Court and asserted that such photographs are proof there was no sexual abuse. Doc. 142. Crow Eagle further claimed that he was unable to subpoena witnesses in Iowa, that he previously stopped his nephews from harming Shannon, that the nephews were "telling their parents [Crow Eagle] was bothering the girls," and that he "never harmed or touched any of his relatives." Doc. 142.

Crow Eagle also submitted two letters from Horse Looking. Doc. 142-1. Horse Looking's first letter stated that he was told by Dale Broken Leg ("Broken Leg")[2] that Crow Eagle "did not do that crime." Doc. 142-1 at 1. Horse Looking was unable to recall what date this conversation occurred and acknowledged that Broken Leg is deceased. Doc. 142-1 at 1. Horse Looking's first letter also stated that "everybody knows [Crow Eagle] is innocent" and that Broken Leg said other men assaulted "this girl . . . several times." Doc. 142-1 at 1. Horse Looking's second letter did not address any alleged recantations and indeed neither letter mentions either Shannon or Dusti by name. See Doc. 142-1 at 2.

---

[2] Crow Eagle's affidavits refer to Dale Broken Leg as Dale Eagle Deer. Docs. 138-1, 142. For clarity, and noting the consistency of Crow Eagle's second affidavit and Horse Looking's first letter acknowledging that such person is now deceased, Dale Broken Leg will be used throughout the remainder of this opinion. See Docs. 142, 142-1 at 1.

4

## II. DISCUSSION

### A. Motion for New Trial

Under Rule 33 of the Federal Rules of Criminal Procedure, this Court "may vacate any judgment and grant a new trial if the interest of justice so requires." This Court has "'wide discretion'" in deciding whether to grant a new trial. United States v. Malloy, 614 F.3d 852, 862 (8th Cir. 2011) (quoting United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980)). A new trial should be granted only in an exceptional case where "the evidence preponderates heavily against the verdict." United States v. Starr, 533 F.3d 985, 999 (8th Cir. 2008) (quotation omitted). Such authority, however, "should be exercised sparingly and with caution." United States v. Cole, 537 F.3d 923, 926 (8th Cir. 2008) (quoting United States v. Sturdivant, 513 F.3d 795, 802 (8th Cir. 2008)).

The standard for a new trial based on newly discovered evidence is "'rigorous' because these motions are 'disfavored.'" United States v. Baker, 479 F.3d 574, 577 (8th Cir. 2007) (quoting United States v. Dogskin, 265 F.3d 682, 685 (8th Cir. 2001)). As stated in United States v. Baker, Crow Eagle must prove four factors in order to receive a new trial on this basis:

> (1) the evidence must have been unknown or unavailable to the defendant at the time of trial; (2) the defendant must have been duly diligent in attempting to uncover it; (3) the newly discovered evidence must be material; and (4) the newly discovered evidence must be such that its emergence probably will result in an acquittal upon retrial.

Id. (quoting United States v. Haskell, 468 F.3d 1064, 1076 (8th Cir. 2006)); see also United States v. Hollow Horn, 523 F.3d 882, 889–90 (8th Cir. 2008). For newly discovered evidence to be material it must be "more than merely cumulative or impeaching." Dogskin, 265 F.3d at 685. The new evidence must also be admissible, because if the evidence is inadmissible, "there is no 'reasonable likelihood that the new evidence could have affected the judgment of the jury.'" Id. at 686 (quoting Ray v. United States, 588 F.2d 601, 603 (8th Cir. 1978)).

The Eighth Circuit "view[s] with suspicion motions for new trial based on the recantation of a material witness because '[t]he stability and finality of verdicts would be greatly disturbed if courts were too ready to entertain testimony from witnesses who have changed their minds, or who claim to have lied at the trial.'" United States v. Rouse, 410 F.3d 1005, 1009 (8th Cir. 2005) (second alteration in original) (quoting United States v. Grey Bear, 116 F.3d 349, 350 (8th Cir. 1997)). "When the claim of newly discovered evidence is based on a recantation, the district court must first determine whether the recantation is credible." Id. Here, "the real question . . . is not whether the district judge believed the recantation, but how likely the district judge thought a jury at a second trial would be to believe it." Id. (quoting Grey Bear, 116 F.3d at 350).

In this case, Crow Eagle's allegations that Shannon and Dusti have recanted are not at all credible. First, Crow Eagle's own affidavit conflicts with Horse Looking's first letter. Crow Eagle asserts that he was told by Horse Looking that Horse Looking had been contacted by Broken Leg about Shannon recanting her allegations. Horse Looking's first letter, however, does not state that Broken Leg spoke with Shannon or that he knows anything about Shannon recanting. Horse Looking's first letter merely states that Broken Leg told him that "Leonard Oliver did not do that crime." Doc. 142-1 at 1. There is no mention of recantation at all, either by Shannon or Dusti, in Horse Looking's letters. The only mention of the purported recantations in the record is from Crow Eagle's own uncorroborated affidavits and motion. Docs. 138-1 at 2, 142. Given the lack of corroboration and the obvious hearsay basis, Crow Eagle's assertions are not credible. See Dogskin, 265 F.3d at 687 (affirming district court's finding that proffered affidavit, even if true, lacked specifics, was speculative, and not convincing to support new trial).

Moreover, Crow Eagle has not come anywhere close to satisfying the four new trial factors. First, the unsubstantiated assertion that Shannon and Dusti were "coached" through their testimony by the government, even if it were true, would merely serve as impeaching evidence, and thus does not meet the materiality standard. See Hollow Horn, 523 F.3d at 886–87, 889–90 (affirming denial

6

of new trial based on witness's allegation that minor victim's parents "coached" testimony at defendant's trial because allegation was mere impeachment evidence). Second, Crow Eagle's "evidence" about the alleged recantations could not and indeed would not result in an acquittal upon retrial because that evidence is inadmissible hearsay within hearsay. See Fed. R. Evid. 801–05. Crow Eagle stated in his affidavit that he heard from Horse Looking[3] who heard from Broken Leg who heard that Shannon recanted. The hearsay issues are further exacerbated by the fact that Broken Leg is now deceased. See Dogskin, 265 F.3d at 685–86 (noting a "less reliable adjudication" would result when the defendant's alleged recanted testimony derives from a now deceased victim). Because such evidence would be inadmissible at trial, the new trial standard has not been met. See id. at 687 (finding inadmissible hearsay statements not likely to produce an acquittal at a new trial); United States v. Worley, 88 F.3d 644, 646–47 (8th Cir. 1996) (same); United States v. Menard, 939 F.2d 599, 600 (8th Cir. 1991) (per curiam) (same).

The issues raised in Crow Eagle's second affidavit also do not warrant a new trial based on newly discovered evidence. First, the family photographs were not unknown or unavailable at trial, because the dates on the photographs, which Crow Eagle claims he received as updated photographs, pre-date trial. The photographs also are not material, having merely cumulative or limited impeachment value. Second, if unidentified witnesses from Iowa were not subpoenaed as Crow Eagle maintains, that circumstance was not unknown at trial. Third, Crow Eagle's contention regarding his nephews was not unknown at trial and is not material. Lastly, Crow Eagle's statement that he "never harmed or touched any of his relatives," Doc. 142, was not unknown at trial and indeed was the nature of his defense.

B. Request for Evidentiary Hearing

---

[3]As stated above, Horse Looking's own letters do not state that Shannon recanted to Broken Leg who in turn told Horse Looking.

Crow Eagle requested an evidentiary hearing in his Motion for New Trial. Doc. 138 at 3. A "'district court has wide discretion' with regard to such requests." Baker, 479 F.3d at 579 (quoting United States v. Preciado, 336 F.3d 739, 747 (8th Cir. 2003)). "Absent exceptional circumstances, a motion for new trial based on newly discovered evidence may be decided on affidavits without a hearing." Id. (quoting Dogskin, 265 F.3d at 687). Additionally, "[t]he necessity for a hearing is lessened in cases involving challenged testimony where the trial judge has had the opportunity to observe the demeanor and weigh the credibility of the witness at trial." Id. (alteration in original) (quoting United States v. Begnaud, 848 F.2d 111, 113 (8th Cir. 1988)); see also Preciado, 336 F.3d at 747 (affirming a denial of an evidentiary hearing and relying, in part, on the fact that motion judge had been trial judge); United States v. Provost, 969 F.2d 617, 619–20 (8th Cir. 1992) (same).

In this case, an evidentiary hearing on Crow Eagle's motion for new trial is not necessary because the issues raised do not present an exceptional circumstance. See Dogskin, 265 F.3d at 687 (finding ambiguous statement, construed as recantation, from deceased victim was not an exceptional circumstance to require evidentiary hearing); see also Provost, 969 F.2d at 620 ("[R]ecantation of testimony, in and of itself, does not constitute exceptional circumstances which require a hearing."). Crow Eagle supported his Motion for New Trial with his own affidavit and was provided the opportunity to supplement his motion with additional evidence. See Doc. 141. Crow Eagle has presented little other than his own contention that Shannon and Dusti recanted. This Court conducted Crow Eagle's jury trial, observed Shannon and Dusti's testimony and cross-examination, knows the evidence presented by both parties, and finds that utterly unsubstantiated assertions of recantation do not justify an evidentiary hearing.

### C. Due Process

Next, Crow Eagle argues that his due process rights were violated because Shannon and Dusti "were compelled to offer false testimony" and were "'coached'" by the prosecution during his jury trial. Doc. 138 at 2. To establish a due process violation based on prosecutorial use of false

8

testimony, Crow Eagle must show that "(1) the prosecution used perjured testimony; (2) the prosecution should have known or actually knew of the perjury; and (3) there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict." United States v. Bass, 478 F.3d 948, 951 (8th Cir. 2007) (quoting United States v. Funchess, 422 F.3d 698, 701 (8th Cir. 2005)).

In this case, Crow Eagle's due process argument cannot stand because it is premised on an unsubstantiated assumption of perjured testimony. As explained above, Crow Eagle has not corroborated or presented any reliable evidence at all to show that either Shannon or Dusti falsely testified at trial. Even if the testimony were somehow perjured, Crow Eagle has not presented this Court with evidence that the prosecution should have known or knew of the perjury. See Bass, 478 F.3d at 951 (finding no due process violation because inconsistent witness statements, unsupported by further evidence by the defendant, do not charge prosecution with knowledge of perjured testimony).

### D. Malicious Prosecution

Finally, Crow Eagle argues that this case "is a malicious prosecution which is the result of an ongoing feud between [himself] and his brothers Gerald and Marlon." Crow Eagle's allegations of malicious prosecution are misplaced. All five counts were supported by probable cause, four of which resulted in a conviction by jury and the fifth of which this Court submitted to the jury as there was evidence creating a jury question there. Further, there is no showing of malice, and Crow Eagle's family dynamic was explored at trial.

### III. CONCLUSION

Therefore, it is hereby

ORDERED that Defendant's Motion for New Trial and request for evidentiary hearing, Doc. 138, is denied. It is further

ORDERED that the Court finds that no certificate of appealability shall issue in this matter.

9

DATED this 8th day of September, 2015.

BY THE COURT:

/s/ Roberto A. Lange
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE