UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GILBERT OLIVER CROW EAGLE JR.,<br><br>Defendant. | 3:11-CR-30014-RAL<br><br><br>ORDER DENYING MOTION FOR<br>COMPASSIONATE RELEASE |

After serving over 10 years of his sentence for multiple sex offenses, Gilbert Crow Eagle
Jr. filed a Motion for Compassionate Release. Doc. 144. Because he is 68 years old and in poor
health, he argues that relief is warranted. Doc. 144 at 2; Doc. 150 at 8–13. For the reasons
discussed, Crow Eagle's motion is denied at this time.

I.    **Facts and Procedural History**

In March 2012, Crow Eagle was convicted by a jury of two counts of aggravated sexual
abuse with a child and two counts of abusive sexual contact with a child. Doc. 80; Doc. 134 at 1.
Crow Eagle's victims were his two nieces, D.O. and S.O., and the offenses occurred approximately
13 or 21 years before. Doc. 134 at 2. When S.O. was around eight or nine years old, Crow Eagle
rubbed her vaginal area over her clothes. Doc. 134 at 2. Several years later, when D.O. was around
six to seven years old, Crow Eagle rubbed her vaginal area over her clothes numerous times and
had sexual intercourse with her. Doc. 134 at 2.

1

During the trial, three other women gave other act evidence that Crow Eagle had sexually abused them in a similar manner. Doc. 134 at 2. Crow Eagle's sister testified that he had sexually abused her more times than she could remember beginning when she was six or seven and continuing until she was 18. Doc. 134 at 2. Another of Crow Eagle's nieces testified that he sexually abused her over twenty times starting when she was seven years old. Doc. 134 at 2. Still another of Crow Eagle's nieces testified that he attempted to sexually assault her when she was eleven years old. Doc. 134 at 2.

Because of the testimony that Crow Eagle was a serial sexual offender and began to commit abusive sexual acts in his teen years, this Court declined to place Crow Eagle in a lower criminal history category than what the presentence investigation report calculated. Doc. 120 at 41–42. With Crow Eagle being in a criminal history category IV and the total offense level being 33, the sentencing guideline range for his convictions was 188 months to 235 months. Doc. 120 at 40–42. Crow Eagle faced a maximum sentence of life in prison on the two convictions for aggravated sexual abuse. Doc. 120 at 39.

At the time of sentencing, Crow Eagle was 58 years old and in poor health. Doc. 120 at 44. He was dependent on oxygen and suffered from chronic health conditions including COPD, coronary artery disease, and other lung issues. Doc. 120 at 44. Based on his age and life expectancy, Crow Eagle made a motion for downward departure from the sentencing guidelines. Doc. 110. The Government made a motion for upward departure based on the seriousness of the offenses. Doc. 97.

This Court concluded that the heinous nature of the offenses called for the sentence to administer punishment. Doc. 120 at 45. Because the offenses had occurred over a decade before, the Court stated deterrence and protection of the public were somewhat less compelling, although

still relevant, sentencing factors in this case. Doc. 120 at 45. The Court then denied Crow Eagle's

motion for downward departure, denied the Government's motion for consecutive sentences, and

imposed a total sentence of 192 months, or approximately 16 years, followed by five years of

supervised release. Doc. 120 at 45–47. The Court acknowledged that this sentence could

effectively amount to a life sentence because of Crow Eagle's age and poor health. Doc. 120 at

47. Nonetheless, the Court stated that the nature of the offenses called for such a sentence and that

the sentence was not greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a). Doc.

120 at 46. The Court further recommended that Crow Eagle serve his sentence in a federal medical

center due to his medical issues. Doc. 120 at 51.

The Bureau of Prisons (BOP) placed Crow Eagle in medical level four care, the highest

level of medical care the BOP offers. Doc. 150 at 3. Since his incarceration, Crow Eagle has

continued to suffer from chronic medical conditions, including many of the same conditions he

had when sentenced. Doc. 151 at 16. In accordance with this Court's Standing Order 20-06, over

3,000 pages of Crow Eagle's medical records have been filed with the Court. Docs. 146, 147, 148,

149. These records show that Crow Eagle has suffered from, or complained of suffering from,

medical conditions including but not limited to acid reflux, dermatitis, a chronic ununited elbow

fracture, chronic back pain, chronic headaches, anemia, elbow pain, falls, and vision issues during

his incarceration. Doc. 146 at 104, 276, 413, 894, 1155, 1163; Doc. 147 at 1101; Doc. 148 at 539;

Doc. 149 at 120, 131, 161, 184, 200, 213, 225, 368. There are 58 medical conditions noted as

"resolved" in Crow Eagle's health history. Doc. 150 at 3. These include YAG laser capsulotomy

surgery on his left eye in 2014, a total knee replacement in 2017, and gallbladder removal in 2019.[1] Doc. 150 at 3–4.

Around October 2020, Crow Eagle became infected with COVID-19. Doc. 151 at 5. He recovered and has since been vaccinated and received a booster shot against the virus. Doc. 151 at 5. In February 2021, Crow Eagle reported falling against his dresser and having pain from the fall over a month later. Doc. 150 at 4. In a medical overview report dated May 11, 2021, a doctor reported that Crow Eagle had a number of chronic progressive diseases for which full recovery is not expected. Doc. 146 at 271; Doc. 149 at 379–80. Crow Eagle's current diagnoses include: mild coronary artery disease, COPD, asthma, a chronic left elbow fracture, degenerative joint disease of right knee, hearing loss, periodic anemia, hypertension, obstructive sleep apnea, chronic c-spine pain, ulnar nerve compression, a "mild neurocognitive disorder,"[2] and obesity. Doc. 146 at 271–72; Doc. 149 at 379–80; Doc. 150 at 2–3, 11. Crow Eagle uses a walker, needs oxygen therapy periodically, and takes over twenty different medications to manage his pain. Doc. 149 at 379–80; Doc. 150 at 2–3. Despite his health issues, Crow Eagle is oriented to person, place, and time, and is independent with the activities of daily living. Doc. 146 at 104; Doc. 147 at 1315; Doc. 149 at 6, 193; Doc. 151 at 2.

In January 2022, Crow Eagle filed a pro se motion for compassionate release. Doc. 144. The Federal Public Defender's Office for North Dakota and South Dakota submitted a supplemental brief on his behalf, Doc. 150, and the United States has filed a memorandum in

[1] In the 1990s, Crow Eagle suffered head trauma from being assaulted with a baseball bat. Doc. 146 at 59; Doc. 150 at 4.
[2] Crow Eagle's diagnosis of a "mild neurocognitive disorder" appears to be related to issues with memory recall. He was diagnosed on March 16, 2021, and refused to take a neuropsychometric test on January 26, 2022. Doc. 146 at 58; Doc. 148 at 6; Doc. 149 at 140.

4

opposition, Doc. 151.  Crow Eagle maintains his innocence[3] and is currently scheduled to be released on September 23, 2025.  Doc. 150 at 13; Doc. 151 at 1, 21.

## II.   Legal Standard

The First Step Act (FSA), Pub. L. No. 115-391, 132 Stat. 5194 (2018), allows an inmate to seek compassionate release from a federal court if he has exhausted administrative remedies within the prison.  United States v. Rodd, 966 F.3d 740, 744 (8th Cir. 2020); United States v. Condon, 458 F. Supp. 3d 1114, 1117 (D.N.D. 2020).  Crow Eagle filed two requests for compassionate release with the BOP in 2020 and 2021 respectively, both of which were denied.  Doc. 144-1 at 1–3; Doc. 149 at 2–3; Doc. 150 at 6; Doc. 151 at 2.  Therefore, he has exhausted administrative remedies, and his claim is ripe for review.

A "district court has broad discretion in determining whether proffered circumstances warrant" compassionate release under the First Step Act.  United States v. Loggins, 966 F.3d 891, 893 (8th Cir. 2020).  A court may grant a motion for compassionate release if it finds that, "*after considering the factors set forth in section 3553(a)* to the extent that they are applicable, . . . *extraordinary and compelling reasons warrant . . . a reduction*" in the petitioner's sentence.  18 U.S.C. § 3582(c)(1)(A) (emphasis added).  To grant a motion for compassionate release, a court must also determine that the "defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(B)(2).  Ultimately, the petitioner bears the burden of establishing that a sentence reduction is warranted.  See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

---

[3] Indeed, Crow Eagle reportedly told a medical provider that "[h]e hopes that when he gets out that his accusers will pay for lying to the judge and getting him imprisoned."  Doc. 148 at 6.

## III.   Discussion

### A.  18 U.S.C. § 3553(a) Sentencing Factors

The section 3553(a) sentencing factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the [Sentencing Commission] guidelines . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

18 U.S.C. § 3553(a).

Crow Eagle argues that the time he already served is sufficient to accomplish the goals of the § 3553(a) sentencing factors. Doc. 150 at 14. Taking account of good time credit, he has now served over 73.3% of his sentence. Doc. 150 at 13. Crow Eagle further argues that he is not a danger to the public, especially if he is ordered to remain under home confinement as a condition of supervised release. Doc. 150 at 13–14. He notes that the sexual offenses for which he was convicted occurred over 20 years ago, he did not have any violations while on home confinement during pre-trial detention, and his age reduces the risk of recidivism. Doc. 150 at 13–14. Crow Eagle further notes that he has taken advantage of anger management, AA, religion, nutrition, finance, victim impact, and other classes while incarcerated. Doc. 144 at 2; Doc. 150 at 13. The United States responds that Crow Eagle should serve the entirety of his sentence because of the seriousness of his offenses. Doc. 151 at 17–22.

6

As this Court has stated, Crow Eagle's sentence of 192 months was appropriate in light of the nature and circumstances of his offenses. Doc. 120 at 45. These circumstances, involving multiple instances of aggravated sexual abuse of two prepubescent children, strongly call for punishment, and these circumstances have not changed. Neither does Crow Eagle's health appear to have dramatically worsened or improved since he has been sentenced except that now he is ten years older. This Court was aware of Crow Eagle's chronic health issues at sentencing and nonetheless concluded that the sentence imposed was sufficient but not greater than necessary in light of the nature of the offenses and the totality of the case including Crow Eagle's health issues. Doc. 120 at 46–47; Doc. 150 at 2–3. Compassionate release may not be warranted when the § 3553(a) sentencing factors have not changed. See Rodd, 966 F.3d at 747 (affirming denial of an inmate's motion for compassionate release when "the Section 3553(a) factors present at sentencing have not changed" (citation omitted)).

## B. Extraordinary and Compelling Reason

The policy statement of the Sentencing Commission, U.S.S.G. § 1B1.13, states "extraordinary and compelling reasons" may exist in the following circumstances:

> (A) Medical Condition of the Defendant.
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is--
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
> (B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the

7

aging process; and (iii) has served at least 10 years or 75 percent of his or her
term of imprisonment, whichever is less.

(C) Family Circumstances.--

(i) The death or incapacitation of the caregiver of the defendant's minor child
or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when
the defendant would be the only available caregiver for the spouse or
registered partner.

(D) Other Reasons.--As determined by the Director of the Bureau of Prisons,
there exists in the defendant's case an extraordinary and compelling reason
other than, or in combination with, the reasons described in subdivisions (A)
through (C).

U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (cleaned up). Crow Eagle argues that all the subsections apply

in his case. Doc. 144 at 2; Doc. 150 at 8–13. Subsection B is the most pertinent to Crow Eagle's

claims and will be addressed first.

Crow Eagle argues that as a 68-year-old Native American, he is near the end of his life

expectancy.[4] Doc. 144 at 2; Doc. 150 at 8–9. He further states that his brother has recently died

of COVID-19 and, although he has been vaccinated, his exposure to COVID-19 variants in prison

puts his health at risk. Doc. 144 at 2; Doc. 150 at 10–13. If released, Crow Eagle claims that he

will be able to support himself with social security benefits. Doc. 144 at 2; Doc. 150 at 14–15.

The United States responds that Crow Eagle's health issues do not warrant compassionate release

because he suffered from many of the same chronic health conditions at the time of sentencing and

he has received and will continue to receive quality medical care during his incarceration. Doc.

151 at 16. If the Court decides to grant Crow Eagle's motion for compassionate release, the United

---

[4] There is evidence to support Crow Eagle's assertation that he is near the end of his life
expectancy. According to a CDC report, the life expectancy for the non-Hispanic American Indian
or Alaska Native population at birth in 2019 was 71.8 years. Elizabeth Arias, Ph.D., et al.,
*Mortality Profile of the Non-Hispanic American Indian or Alaska Native Population, 2019*, NAT'L
VITAL STAT. REPORTS, p. 8 (Nov. 9, 2021), https://www.cdc.gov/nchs/data/nvsr/nvsr70/NVSR70-
12.pdf. The life expectancy for an American Indian or Alaska Native male at birth in 2019 is even
shorter at 68.6 years. Id.

States requests that Crow Eagle be placed in home confinement as a condition of release.  Doc. 151 at 23.

Crow Eagle is over 65 years old and has served at least 10 years of his sentence as required by U.S.S.G. § 1B1.13 cmt. n.1(B).  The record also documents serious health issues and aging, but it is a bit short of establishing particularly "serious deterioration in physical or mental health because of the aging process."  U.S.S.G. § 1B1.13 cmt. n.1(B).  Crow Eagle has COPD, uses a walker, and has a number of chronic health issues.  Despite these health issues, Crow Eagle has continued to function independently and does not have any debilitating physical or mental handicaps.  Doc. 146 at 104; Doc. 147 at 1315; Doc. 149 at 6, 193; Doc. 151 at 2.  Therefore, Crow Eagle has not satisfied the conditions of U.S.S.G. § 1B1.13 cmt. n.1(B).  See United States v. Weidenhamer, No. CR-16-01072-001-PHX-ROS, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release."); United States v. Dana, 467 F. Supp. 3d 962, 968 (D. Or. 2020) (same); United States v. Ayon-Nunez, No. 1:16-CR-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) (same).  If Crow Eagle experiences "serious deterioration in physical or mental health because of the aging process" within the meaning of U.S.S.G. § 1B1.13 cmt. n.1(B), especially once he serves more time, this Court will grant him compassionate release.

Next, Crow Eagle argues that his family circumstances are an extraordinary and compelling reason to grant compassionate release under U.S.S.G. § 1B1.13 cmt. n.1(C).  Doc. 144 at 1–2. Crow Eagle states that his son Jody's leg is amputated below the knee, Jody uses a wheelchair to get around, and he has reached 475 pounds.  Doc. 144 at 1.  Crow Eagle's wife Suzanne[5] has cared

---

[5] Suzanne and Crow Eagle have not legally married but have been together for over 45 years.  Doc. 120 at 43–46; Doc. 144 at 1.

for Jody but struggles to do so, especially since she broke her arm in December 2021. Doc. 144 at 1. Crow Eagle states that he will care for his son and wife to the best of his ability if released. Doc. 144 at 1. U.S.S.G. § 1B1.13 cmt. n.1(C) applies only in narrow circumstances concerning the death or incapacitation of a petitioner's spouse or of the caregiver of a petitioner's minor children. Crow Eagle's family circumstances, although challenging, do not fall within the parameters of U.S.S.G. § 1B1.13 cmt. n.1(C).

U.S.S.G. § 1B1.13 cmt. n.1(A) does not apply either because there is no evidence that Crow Eagle is suffering from a terminal illness, or any physical or mental condition that "substantially diminishes" his ability "to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Crow Eagle's medical records show that, although he relies on medical assistance at the correctional facility and uses a walker, he functions independently in day-to-day living. Doc. 146 at 104; Doc. 147 at 1315; Doc. 149 at 6, 193; Doc. 151 at 2. See United States v. Rodriguez, 424 F. Supp. 3d 674, 682–83 (N.D. Cal. 2019) (holding a petitioner did not satisfy U.S.S.G. § 1B1.13 cmt. n.1(A) when he "was capable of independently performing activities of daily living").

Neither does this Court find that there are any other extraordinary and compelling reasons to grant Crow Eagle's motion for compassionate release under U.S.S.G. § 1B1.13 cmt. n.1(D) ("Other Reasons"). As discussed, the § 3553(a) sentencing factors—balancing Crow Eagle's health issues and age with the interest of punishment—support the sentence imposed. See also United States v. Jones, No. 16-516 (KM), 2022 WL 341201, at *7 (D.N.J. Feb. 4, 2022) (denying a motion for compassionate release when the "sentence [imposed] was designed . . . with the effects of aging in mind" and the petitioner's advanced age and medical history did not outweigh "the need to maintain a sentence that reflects the seriousness of the offense and the need for punishment

10

and deterrence"). Further, Crow Eagle has recovered from COVID-19 and has been vaccinated. And the mere risk of further exposure to COVID-19 "alone cannot independently justify compassionate release, especially considering BOP's . . . extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

### IV. Conclusion and Order

Because there is not an extraordinary and compelling reason to grant Crow Eagle's motion for compassionate release at this time, it is hereby

ORDERED that the Motion for Compassionate Release, Doc. 144, is denied without prejudice to Crow Eagle refiling a motion for compassionate release if his health deteriorates.

DATED this 17ᵗʰ day of March, 2022.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE