UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GILBERT OLIVER CROW EAGLE JR.,<br><br>Defendant. | 3:11-CR-30014-RAL<br><br><br>OPINION AND ORDER GRANTING COMPASSIONATE RELEASE |

After this Court denied his first such motion, Gilbert Crow Eagle Jr. filed a second Motion for Compassionate Release. Doc. 156. Due to Crow Eagle's declining health, advancing age, and the amount of time he has now served, Crow Eagle's motion is granted.

I.   **Facts and Procedural History**

In March 2012, a jury found Crow Eagle guilty of two counts of aggravated sexual abuse of a child and two counts of abusive sexual contact of a child. Doc. 80; Doc. 134 at 1. Crow Eagle's victims were his two nieces, D.O. and S.O., and the offenses had occurred approximately 13 to 21 years before the jury trial. Doc. 134 at 2. When S.O. was around eight or nine years old, Crow Eagle rubbed her vaginal area over her clothes. Doc. 134 at 2. Several years later, when D.O. was around six to seven years old, Crow Eagle rubbed her vaginal area over her clothes numerous times and had sexual intercourse with her. Doc. 134 at 2.

During the trial, three other women testified that Crow Eagle had sexually abused them in similar ways. Doc. 134 at 2. Crow Eagle's sister testified that he had sexually abused her more

1

times than she could remember beginning when she was six or seven and continuing until she was eighteen. Doc. 134 at 2. Another of Crow Eagle's nieces testified that he sexually abused her over twenty times starting when she was seven years old. Doc. 134 at 2. Still another of Crow Eagle's nieces testified that he attempted to sexually assault her when she was eleven years old. Doc. 134 at 2.

At the time of sentencing, Crow Eagle was 58 years old and in poor health. Doc. 120 at 44. He was dependent on oxygen and suffered from chronic health conditions including COPD, coronary artery disease, and other lung issues. Doc. 120 at 44. Based on his age and life expectancy, Crow Eagle made a motion for downward departure and/or variance from the sentencing guidelines and argued that his criminal history was overstated. Doc. 110. Because of the testimony that Crow Eagle was a serial sexual offender whose abusive sexual acts began in his teen years, this Court declined to place Crow Eagle in a lower criminal history category than what the presentence investigation report calculated. Doc. 120 at 41–42. The Government made a motion for upward departure or variance based on the seriousness of the offenses. Doc. 97. Crow Eagle after all faced a maximum sentence of life in prison on the two convictions for aggravated sexual abuse. Doc. 120 at 39. With Crow Eagle being in a criminal history category IV and the total offense level being 33, the sentencing guideline range for his convictions was 188 months to 235 months. Doc. 120 at 40–42.

After considering the nature and circumstances of the offense and Crow Eagle's personal characteristics, this Court concluded that the heinous nature of the offenses called for the sentence to administer punishment. Doc. 120 at 45. Because the offenses had occurred over a decade before, this Court believed that deterrence and protection of the public were somewhat less compelling, although still relevant, sentencing factors in this case. Doc. 120 at 45. This Court

then denied Crow Eagle's motion for downward departure or variance, denied the Government's request for consecutive sentences, and imposed a total sentence of 192 months, or approximately 16 years, followed by five years of supervised release. Doc. 120 at 45–47. This Court acknowledged that such a sentence could effectively amount to a life sentence because of Crow Eagle's age and poor health. Doc. 120 at 47. Nonetheless, this Court believed that the nature of the offenses called for such a sentence and that such a sentence was not greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a). Doc. 120 at 46. This Court recommended that Crow Eagle serve his sentence in a federal medical center due to his medical issues. Doc. 120 at 51. The Bureau of Prisons (BOP) has placed Crow Eagle in medical level four care, the highest level of medical care the BOP offers. Doc. 150 at 3.

### A. Crow Eagle's First Motion for Compassionate Release

In January 2022, Crow Eagle filed a pro se motion for compassionate release, Doc. 144, and the Federal Public Defender's Office for North Dakota and South Dakota submitted a supplemental brief on his behalf, Doc. 150. In accordance with this Court's Standing Order 20-06, over 3,000 pages of Crow Eagle's medical records were filed with the Court. Docs. 146, 147, 148, 149. The records showed that Crow Eagle had suffered from, or complained of suffering from, medical conditions including but not limited to acid reflux, dermatitis, a chronic ununited elbow fracture, chronic back pain, chronic headaches, anemia, elbow pain, falls, and vision issues during his incarceration. Doc. 146 at 104, 276, 413, 894, 1155, 1163; Doc. 147 at 1101; Doc. 148 at 539; Doc. 149 at 120, 131, 161, 184, 200, 213, 225, 368. There were 58 medical conditions noted as "resolved" in Crow Eagle's health history. Doc. 150 at 3. These included YAG laser capsulotomy surgery on his left eye in 2014, a total knee replacement in 2017, and gallbladder removal in 2019. Doc. 150 at 3–4.

In a medical overview report dated May 11, 2021, a doctor reported that Crow Eagle had a number of chronic progressive diseases for which full recovery is not expected. Doc. 146 at 271; Doc. 149 at 379–80. Crow Eagle's diagnoses at the time included: mild coronary artery disease, COPD, asthma, a chronic left elbow fracture, degenerative joint disease of right knee, hearing loss, periodic anemia, hypertension, obstructive sleep apnea, chronic c-spine pain, ulnar nerve compression, a "mild neurocognitive disorder,"[1] and obesity. Doc. 146 at 271–72; Doc. 149 at 379–80; Doc. 150 at 2–3, 11. Crow Eagle was then using a walker, needed oxygen therapy periodically, and took over twenty different medications to manage his pain. Doc. 149 at 379–80; Doc. 150 at 2–3. Despite his health issues, Crow Eagle was oriented to person, place, and time, and was independent with the activities of daily living. Doc. 146 at 104; Doc. 147 at 1315; Doc. 149 at 6, 193; Doc. 151 at 2.

In denying Crow Eagle's first motion for compassionate release, this Court deemed Crow Eagle's health conditions to fall "a bit short of establishing particularly 'serious deterioration in physical or mental health because of the aging process.'" Doc. 153 at 9. However, this Court left open the possibility of future relief, stating "[i]f Crow Eagle experiences 'serious deterioration in physical or mental health because of the aging process' within the meaning of U.S.S.G. § 1B1.13 cmt. n.1(B), especially once he serves more time, this Court will grant him compassionate release." Id.

**B. Crow Eagle's Second Motion for Compassionate Release**

---

[1] Crow Eagle's diagnosis of a "mild neurocognitive disorder" appears to be related to issues with memory recall. He was diagnosed on March 16, 2021, and refused to take a neuropsychometric test on January 26, 2022. Doc. 146 at 58; Doc. 148 at 6; Doc. 149 at 140. While unclear if the event is related to his mild neurocognitive disorder, in the 1990s, Crow Eagle suffered head trauma from being assaulted with a baseball bat. Doc. 146 at 59; Doc. 150 at 4.

Crow Eagle then filed his second pro se motion for compassionate release. Doc. 156. The Federal Public Defender's Office for North Dakota and South Dakota submitted a supplemental brief on his behalf, Doc. 166, and the United States filed a memorandum in opposition, Doc. 175. Again, in accordance with this Court's Standing Order 20-06, more than 1,000 additional pages of medical records were filed with this Court in June 2023. Doc. 157. In June 2024, this Court also ordered supplemental medical records be filed with the Court to provide a more up-to-date look at Crow Eagle's health status. Doc. 179. An additional 344 pages of medical records were promptly provided. Doc. 180.

Since Crow Eagle's first motion was denied, he has experienced several new medical issues. On July 11, 2022, he presented to medical staff with symptoms of an ischemic stroke. Doc. 157 at 938. Crow Eagle "had sudden onset of slurred speech, left facial weakness with drooling on the left side of his mouth, and left arm and leg weakness." Id. at 1137. A Holter monitor revealed pauses in his heart rate and that he had an AV block. Id. at 938. Crow Eagle also has a family history of stroke. His father had a stroke at the age of 60, and his brother died of a stroke at the age of 71, Crow Eagle's current age. Doc. 156-5 at 1; Doc. 157 at 542. Crow Eagle's medical providers concluded his symptoms were "very consistent with an ischemic stroke." Doc. 157 at 1138.

In response to the results of his Holter monitor, Crow Eagle's medical providers recommended he receive a transesophageal echocardiogram (TEE) to image his heart. Doc. 156-1 at 2. The TEE revealed Crow Eagle has a patent foramen ovale (PFO)[2] with bidirectional flow and an enlarged

---

[2] A PFO is a "hole in the heart" between the two atria. Patent Foramen Ovale, The Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/patent-foramen-ovale/symptoms-causes/syc-20353487 (last visited Sept. 25, 2024). This opening is present at birth, but typically closes during infancy. Id. PFOs generally do not require treatment, however they do increase the risk of stroke. Id.

5

left atrial size. Doc. 156-3 at 1-2. Given Crow Eagle's multiple risk factors, he meets the criteria for an operation to close the PFO, but his providers do not recommend closure at this time. Doc. 157 at 597; Doc. 156-5 at 3.

Crow Eagle continues to experience dyspnea, or "breathlessness," and he reports that it is getting progressively worse. Doc. 157 at 1100. Indeed, his pulmonologist noted on a June 06, 2023, visit that "[h]is breathlessness has markedly worsened with certain environmental exposures such as hot humid days or very cold days or environmental dust such as with current ongoing wild fires. On these days he has difficulty doing anything outdoors due to breathlessness." Id. at 1100. His chronic headaches continue, although recent Botox treatments seem to provide some relief. Doc. 180 at 1. He reports having "constant" knee pain, particularly in his left knee, which was replaced in 2002. Id. at 135. To move around, Crow Eagle still requires a walker. Id. at 2. As of April 30, 2024, he is on at least 20 different medications and prescriptions for his various conditions. Doc. 180 at 13-14, 242-48. Crow Eagle continues to serve his sentence in a federal medical center due to his medical issues. Doc. 156 at 1.

## II.   Legal Standard

Sentences are final judgments, and under ordinary circumstances, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); see also United States v. Olson, No. 3:19-CR-30133-RAL, 2021 WL 4478031, at *1 (D.S.D. Sept. 30, 2021). However, 18 U.S.C. § 3582(c)(1)(A) provides an exception to this general rule. Section 3582(c)(1)(A), as amended by the First Step Act, allows district courts to hear and decide motions for a reduced sentence filed by prisoners themselves, so long as the prisoner exhausted all administrative rights to appeal the BOP's failure to file a motion on the prisoner's behalf, or after 30 days have passed from the receipt of such a request by the warden of the prisoner's facility, whichever is earlier.

Crow Eagle submitted an administrative request for compassionate release to the warden of FMC Rochester on August 2, 2023. Doc. 165. On August 14, 2023, the warden acknowledged receipt of the request. Doc. 169. More than thirty days have now passed since the warden of FMC Rochester received Crow Eagle's request; thus, Crow Eagle's motion is now ripe for review by this Court.

Under § 3582(c)(1)(A), a district court may grant a prisoner's motion for a reduced sentence after (1) the court finds that extraordinary and compelling reasons exist,[3] (2) those reasons are consistent with the applicable policy statement promulgated by the United States Sentencing Commission, here § 1B1.13; and (3) an examination of the § 3553(a) sentencing factors supports a sentence reduction. § 3582(c)(1)(A)(i)–(ii).

### III.  Discussion

#### A. Extraordinary and Compelling Reason

Congress did not define "extraordinary and compelling reasons." See 28 U.S.C. § 994(t). Instead, Congress charged the Sentencing Commission with issuing general policy statements outlining the "appropriate use of . . . the sentence modification provisions set forth in section[] . . . 3582(c)," including "what should be considered extraordinary and compelling reasons for sentence reduction [and] the criteria to be applied." § 994(a)(2)(c), (t). Effective November 1, 2023, the Sentencing Commission updated the criteria for what constitutes "[e]xtraordinary and compelling reason[s]" to reduce a term of imprisonment. U.S.S.G. § 1B1.13(b). As amended, "extraordinary and compelling reasons exist under any of the following

---

[3] A court could also grant a reduced sentence if the defendant is at least 70 years old and has served at least 30 years in prison, see § 3582(c)(1)(A)(ii), but Crow Eagle has not served 30 years in prison so the Court confines its analysis to the extraordinary and compelling reasons exception under § 3582(c)(1)(A)(ii).

7

circumstances or [through] a combination thereof": (1) medical circumstances of the defendant, (2) age of the defendant, (3) family circumstances of the defendant, (4) being a victim of sexual or physical abuse while in custody, (5) other reasons with equal gravity as the aforementioned circumstances, and (6) unusually long sentences. A "district court has broad discretion in determining whether proffered circumstances warrant" compassionate release under the First Step Act. United States v. Loggins, 966 F.3d 891, 893 (8th Cir. 2020). In his motion, Crow Eagle specifically relies on § 1B1.13(b)(3) – age of the defendant – as the extraordinary and compelling reason warranting his release. Docs. 156, 166.

Under § 1B1.13(b)(3), an extraordinary and compelling reason exists when "[t]he defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."

Crow Eagle was 68 years old when his first motion for compassionate release was denied. In the order, this Court acknowledged Crow Eagle was at or near the average life expectancy for an American Indian male at birth in 2019 (68.6 years). Doc. 153 at 8 n.4. As of September 12, 2024, Crow Eagle is now 71 years old. He exceeds both the age requirement for § 1B1.13(b)(3) and the average life expectancy of an American Indian male. Thus, Crow Eagle's age weighs in favor of granting compassionate release.

When Crow Eagle filed his previous motion for compassionate release, he fell "a bit short of establishing particularly 'serious deterioration in physical or mental health because of the aging process.'" Doc. 153 at 9. Since that time, Crow Eagle's health has continued to deteriorate. Most notably, Crow Eagle had a stroke in July of 2022. Doc. 157 at 938. Given Crow Eagle's numerous risk factors, including a family history of stroke, Crow Eagle is at an increased risk of another

stroke. The risk is further increased by Crow Eagle's PFO and enlarged left atrial size which were discovered during his TEE. Doc. 156-3 at 1-2. Additionally, several conditions that were present at the time of Crow Eagle's first motion have neither been resolved nor improved. Crow Eagle continues to have trouble with his breathing and reports that it is getting progressively worse. Doc. 157 at 1100. Between his first and second motion, he continued to visit medical staff for his migraines and is now receiving Botox injections for chronic post-stroke headaches on a recurring basis. Doc. 180 at 1.

     Presently, Crow Eagle suffers from several chronic diseases and ailments including, but not limited to, coronary artery disease, COPD, stroke, asthma, hypertension, hyperlipidemia, chronic headaches, chronic knee pain, breathing difficulties, and glaucoma. Doc. 180 at 9, 77. While his medical conditions appear well-managed by FMC Rochester and the Mayo Clinic, they have nonetheless increased in severity and frequency as Crow Eagle has aged. Although Crow Eagle fell short in his first motion, the combination of a stroke, the progression rather than improvement of his other ailments, and Crow Eagle's numerous chronic diseases at this time satisfy the threshold showing of "serious deterioration in physical or mental health because of the aging process."

     When this Court denied Crow Eagle's first motion for compassionate release, Crow Eagle had served 10 years of his sentence. Id. at 9. As of the date of this order, Crow Eagle has served over 12.5 years of his sentence. Doc. 157 at 1160. This translates to over 83.2 percent of his statutory term of imprisonment. Id. Indeed, Crow Eagle is set to be released in less than one year on September 23, 2025. Id. Crow Eagle has served the bulk of his sentence, which weighs in favor of granting compassionate release.

Because Crow Eagle is over 65 years old, is experiencing a "serious deterioration in physical or mental health because of the aging process," and has served well over ten years of his term of imprisonment, there are extraordinary and compelling reasons for compassionate release under § 1B1.13(b)(3).

### B. 18 U.S.C. § 3553(a) Sentencing Factors

To grant compassionate release, a court must also find that the § 3553(a) sentencing factors support early release. The § 3553(a) sentencing factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the [Sentencing Commission] guidelines . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a). These factors inform the Court's duty to ensure the sentence imposed is "'sufficient, but not greater than necessary,' to comply with the sentencing purposes set forth in § 3553(a)[]." Pepper v. United States, 562 U.S. 476, 491 (2011).

When denying Crow Eagle's first motion for compassionate release, this Court found that the § 3553(a) factors did not support early release at that time. Crow Eagle's sentence of 192 months was appropriate in light of the nature and circumstances of his offenses. Doc. 120 at 45. These circumstances, involving multiple instances of aggravated sexual abuse of two prepubescent children, strongly called for punishment, and those circumstances have not changed. Crow Eagle's

health issues at the time he filed his first motion for compassionate release were not much different than health issues disclosed in the presentence investigation report. This Court concluded that the § 3553(a) factors had not changed since sentencing, and as a result, compassionate release was not warranted.

Now, however, Crow Eagle's health issues are different. As noted above, Crow Eagle suffered from a stroke, and some ailments present at the time he was sentenced have worsened. The characteristics of the defendant are different, weighing in favor of early release. Crow Eagle is older and requires the assistance of a walker to move around, thereby limiting the danger he poses to the public. Moreover, Crow Eagle has served the great majority of his sentence, over 12.5 years, and is within one year of his calculated release date. Crow Eagle has served a sentence long enough to afford adequate deterrence. Thus, the § 3553(a) factors support early release.

### C. Release Plan

The Government does not dispute Crow Eagle's deteriorating health. Doc. 175 at 6. The thrust of the Government's opposition to early release instead lies with what it believes to be Crow Eagle's nonviable release plan. Crow Eagle's plan once released is to live with his wife, Suzanne Oliver, and son, Jody Oliver, in Mission, South Dakota. Doc. 166 at 19. The Government opposes the release plan because it believes three minor children reside at the same residence. Doc. 175 at 6. Indeed, the release plan was initially denied by United States Probation because, after an investigation, it was determined that three minor children did reside at the residence. Doc. 172. To reside in the same residence as minor children would place Crow Eagle in violation of a special condition of supervised release. Doc. 118 at 4 ("The defendant shall not initiate, establish or maintain contact with any male or female child under the age of 18 nor attempt to do so except under circumstances approved in advance and in writing by the probation office."). The

Government argues that, by failing to provide a viable release plan, Crow Eagle "fails to meet his burden to establish compassionate release is justified or warranted." Doc. 175 at 7.

Crow Eagle responded by observing that an approved release plan is not a requirement for granting compassionate release. Doc. 178 at 3. Crow Eagle also states that the three minor children have moved out of the residence, that his probation officer is aware that the children moved out, and that his release plan is on track to get approved. Id. at 3-4.

Crow Eagle is correct that an approved release plan is not required before a court can grant a motion for compassionate release. § 1B1.13. However, "granting relief still lies within the district court's discretion." United States v. Vangh, 990 F.3d 1138, 1140 (8th Cir. 2021) (emphasizing the permissive language of 18 U.S.C. § 3582(c)(1)(A)(i)). Although an approved release plan is not an explicit prerequisite for granting compassionate release, the absence of such a plan merits delaying release to allow the probation office time to formulate a viable plan.

Given the severity of Crow Eagle's underlying crimes and his evident refusal to admit he engaged in multiple acts of sexually abusing children, this Court wants to ensure the probation office ample time to plan for Crow Eagle's release and to assure that children are not around Crow Eagle, yet alone possibly living in the same home. Thus, the grant of compassionate release will be delayed approximately 60 days to promote a smooth and safe transition to supervised release.

## IV. Conclusion

Crow Eagle has demonstrated that an extraordinary and compelling reason warrants compassionate release. The § 3553(a) factors also support compassionate release. It is hereby

ORDERED that Crow Eagle's second motion for compassionate release, Doc. 156, is granted to the extent that Crow Eagle's sentence is reduced to a sentence of time served through December 1, 2024. No other part of his sentence shall change, with the single exception of

updating the mandatory and standard conditions of supervised release to those this Court adopted effective November 1, 2016.

DATED this 3rd day of October, 2024.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE